(No. 79547.

REGINALD O'BANNER, Appellee, v. McDONALD'S CORPORATION *et al.* (McDonald's Corporation, Appellant).

*Opinion filed May 31, 1996.—Rehearing denied September 30, 1996.*

BILANDIC, C.J., joined by FREEMAN, J., dissenting.

Roderick A. Palmore, of Sonnenschein, Nath & Rosenthal, of Chicago, for appellant.

Todd Harold Fox, of Kurasch & Stone, Ltd., of Chicago, for appellee.

Judge & James, Ltd., of Park Ridge (Jay S. Judge, Gregory R. James, Jr., S.A. Genson and Gary A. Lynn, of counsel), for *amicus curiae* Illinois Association of Defense Trial Counsel.

Carmen Saginario, Jr., of Capehart & Scatchard, P.A., of Trenton, New Jersey, for *amicus curiae* Burger King Corp.

Roland K. Filippi, of Chicago, for *amicus curiae* Amoco Oil Co.

Power, Rogers & Smith, P.C., of Chicago (Devon C. Bruce, of counsel), for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE HARRISON delivered the opinion of the court:

Reginald O'Banner brought an action in the circuit court of Cook County to recover damages for personal injuries he allegedly sustained when he slipped and fell in the bathroom of a McDonald's restaurant. In his complaint, O'Banner named as defendants McDonald's Corporation (McDonald's) and certain "unknown owners." See 735 ILCS 5/2—413 (West 1994). McDonald's promptly moved for summary judgment on the grounds that the restaurant was actually owned by one of its

franchisees and that it neither owned, operated, maintained, nor controlled the facility.

After initially denying McDonald's motion, the circuit court granted summary judgment in favor of the company and made an express written finding that there was no just reason to delay an appeal. 155 Ill. 2d R. 304(a). The appellate court subsequently reversed and remanded, with one justice dissenting. 273 Ill. App. 3d 588. We granted McDonald's petition for leave to appeal (155 Ill. 2d R. 315) and have allowed Amoco Oil Company, Burger King, the Illinois Association of Defense Trial Counsel and the Illinois Trial Lawyers Association to file briefs as friends of the court (155 Ill. 2d R. 345). For the reasons that follow, we now reverse and remand to the circuit court.

Before addressing the substantive issues before us, we note, as did the appellate court, that there has been some confusion as to the basis for appellate review. The appellate court realized that the circuit court had entered a written finding under Rule 304(a) (155 Ill. 2d R. 304(a)), which governs final judgments as to fewer than all parties or claims, but it did not understand the purpose for such a finding. It believed that appellate jurisdiction was proper only under Rule 301 (155 Ill. 2d R. 301), which pertains to final judgments that dispose of an entire proceeding.

What the appellate court overlooked was that McDonald's was not the only defendant named in O'Banner's complaint. As we have previously indicated, O'Banner named "unknown owners" as well. The "unknown owners" were not involved in McDonald's motion for summary judgment, and the circuit court's order granting McDonald's motion did not affect the continued viability of O'Banner's claims against these remaining defendants. Accordingly, the circuit court's order did not dispose of the entire proceeding and an ap-

peal could not have been brought under Rule 301. Because summary judgment was granted to fewer than all of the defendants, the only basis for an immediate appeal was under Rule 304(a). McDonald's itself clearly appreciated this, for its summary judgment motions consistently included a request for entry of the requisite Rule 304(a) findings.

Although O'Banner's notice of appeal invoked Rule 301 rather than Rule 304(a), that mistake is of no consequence. Nothing in our rules requires a notice of appeal to even mention whether review is sought under Rule 301 or 304(a). What is important is that the notice specify "the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court" (155 Ill. 2d R. 303(b)(2)) so that the successful party is advised of the nature of the appeal (see *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 433-34 (1979)). There is no question that this requirement was satisfied here. Accordingly, O'Banner's citation to the wrong rule was nothing more than harmless surplusage. His notice of appeal was sufficient to invoke the appellate court's jurisdiction.

The substantive issue before the appellate court, and the question which concerns us today, is whether the circuit court erred in granting McDonald's motion for summary judgment. Under section 2—1005(c) of the Code of Civil Procedure (735 ILCS 5/2—1005(c) (West 1994)), a party is entitled to summary judgment

> "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

In applying this statute, the court must construe the pleadings, depositions and affidavits strictly against the moving party and liberally in favor of the opponent. Although use of the summary judgment procedure can be an efficient means for disposing of certain lawsuits, it is

a drastic measure that should be employed only when the right of the moving party is clear and free from doubt. *Loyola Academy v. S&S Roof Maintenance, Inc.,* 146 Ill. 2d 263, 271 (1992).

The circuit court here entered summary judgment in favor of McDonald's based on the company's argument that it was merely the franchisor of the restaurant where O'Banner was injured and, as such, had no responsibility for the conditions that caused his accident. O'Banner challenged this conclusion in the appellate court by theorizing that even though McDonald's was a franchisor, it could nevertheless be held liable for the franchisee's negligence under principles of *respondeat superior* because there was sufficient evidence in the record to establish that the franchisee served as McDonald's actual agent. In the alternative, O'Banner contended that McDonald's could be vicariously liable for the acts and omissions of the franchisee based on the doctrine of apparent agency.

The appellate court rejected the actual agency theory based on the documentary evidence, but held that there remained genuine issues of material fact with respect to O'Banner's alternative theory of apparent agency. Accordingly, it reversed and remanded for further proceedings. One justice dissented, arguing that reliance on apparent agency was improper because the theory was not properly raised in the circuit court and there was no factual basis for it in the record. 273 Ill. App. 3d at 596-97 (Rakowski, J., dissenting). The dissenting justice further protested that the majority's analysis was not supported by precedent from Illinois or elsewhere. 273 Ill. App. 3d at 598-99 (Rakowski, J., dissenting).

In the appeal before this court, the issue of actual agency has not been pursued. The sole question before us is whether the appellate court erred in reversing and

remanding based on the theory of apparent agency. Although the dissenting appellate court justice believed that the question of apparent agency was not properly before the court for review, resolution of that issue is unnecessary. Even if O'Banner had properly raised the theory of apparent agency in the circuit court, summary judgment against him was nevertheless proper.

Apparent agency, also known in Illinois as apparent authority, has long been recognized in this state and was recently discussed by our court in *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511 (1993). The doctrine is based on principles of estoppel. The idea is that if a principal creates the appearance that someone is his agent, he should not then be permitted to deny the agency if an innocent third party reasonably relies on the apparent agency and is harmed as a result. *Gilbert*, 156 Ill. 2d at 523-24.

Under the doctrine, a principal can be held vicariously liable in tort for injury caused by the negligent acts of his apparent agent if the injury would not have occurred but for the injured party's justifiable reliance on the apparent agency. *Gilbert*, 156 Ill. 2d at 523-24. The fundamental obstacle to O'Banner's recovery in this case concerns this element of reliance. Even if one concedes that McDonald's advertising and other conduct could entice a person to enter a McDonald's restaurant in the belief it was dealing with an agent of the corporation itself, that is not sufficient. In order to recover on an apparent agency theory, O'Banner would have to show that he actually did rely on the apparent agency in going to the restaurant where he was allegedly injured. See, *e.g.*, *Miller v. Sinclair Refining Co.*, 268 F.2d 114, 118 (5th Cir. 1959) (apparent agency theory rejected in affirming directed verdict for Sinclair Oil because there was absolutely no evidence as to the reason why appellant patronized filling station where he was injured).

No amount of liberal construction can alter the fact that the record before us is devoid of anything remotely suggesting that the necessary reliance was present here. The pleadings and affidavit submitted by O'Banner in the circuit court state only that he slipped and fell in the restroom of a McDonald's restaurant. They give no indication as to why he went to the restaurant in the first place. The fact that this was a McDonald's may have been completely irrelevant to his decision. For all we know, O'Banner went there simply because it provided the closest bathroom when he needed one or because some friend asked to meet him there.

If O'Banner had any basis to support his position, he was obliged to present it to the circuit court. He did not do so, and the time for substantiating any claim of reliance has passed. The appellate court was therefore wrong to reverse the circuit court's entry of summary judgment in McDonald's favor based on the apparent agency doctrine.

For the foregoing reasons, the judgment of the appellate court is reversed, the judgment of the circuit court is affirmed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

*Appellate court judgment reversed;*
*circuit court judgment affirmed;*
*cause remanded.*

CHIEF JUSTICE BILANDIC, dissenting:

I respectfully dissent from the majority's conclusion that summary judgment against Reginald O'Banner was proper. The majority opinion holds that the record is "devoid" of any facts suggesting that O'Banner relied on an apparent agency in going to the McDonald's restaurant where he was allegedly injured. 173 Ill. 2d at 214. I disagree with the majority's assessment of the record.

In addressing the issue of whether summary judgment was properly entered against O'Banner, we must keep in mind that summary judgment is a drastic remedy. *In re Estate of Hoover*, 155 Ill. 2d 402, 410 (1993). A court should only grant summary judgment when the resolution of a case hinges on a question of law and the moving party's right to judgment is clear and free from doubt. *Hoover*, 155 Ill. 2d at 410; *Colvin v. Hobart Brothers*, 156 Ill. 2d 166, 169-70 (1993). If the court finds that the record contains any genuine issue of material fact, it should deny the motion for summary judgment. Because of the severity of the summary judgment remedy, the court has a duty to construe the record strictly against the movant and liberally in favor of the non-moving party. *Hoover*, 155 Ill. 2d at 411; *Colvin,* 156 Ill. 2d at 170. When construing the record, the court may draw inferences from the undisputed facts. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 272 (1992); *Pyne v. Witmer*, 129 Ill. 2d 351, 358 (1989).

Applying these principles to the case at bar, summary judgment should not have been granted in McDonald's Corporation's favor. When the record is viewed liberally in favor of O'Banner and strictly against McDonald's Corporation, there remains a genuine issue of material fact concerning the existence of an apparent agency relationship between McDonald's Corporation and its franchisee, who operated the restaurant where O'Banner was allegedly injured.

The apparent agency doctrine recognizes that a "principal will be bound not only by that authority which he actually gives to another, but also by the authority which he appears to give." *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 523 (1993). In other words, if the principal creates the appearance that someone is his agent, the principal will not then be permitted to deny the agency where an innocent third party

has relied on it and has been harmed as a result. *Gilbert*, 156 Ill. 2d at 524.

This court recently applied the apparent agency doctrine in a tort case in the context of a hospital setting in *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511 (1993). There, a patient suffered a heart attack after being treated and released by a physician at a hospital emergency room. The patient sued the hospital for negligence, and the trial court granted the hospital summary judgment on the theory that the hospital could not be held vicariously liable because the emergency room physician was an independent contractor, not an actual agent of the hospital. This court reversed the grant of summary judgment in the hospital's favor, finding that a genuine issue of material fact remained as to whether the physician was an apparent agent of the hospital. *Gilbert*, 156 Ill. 2d at 526.

Similarly, the apparent agency doctrine can and should be applied in a franchisor-franchisee setting. See *Shaffer v. Maier*, 68 Ohio 3d 416, 627 N.E.2d 986 (1994); *Watson v. Howard Johnson Franchise Systems, Inc.*, 216 Ga. App. 237, 453 S.E.2d 758 (1995); *Parker v. Domino's Pizza, Inc.*, 629 So. 2d 1026 (Fla. App. 1993); *Gizzi v. Texaco, Inc.*, 437 F.2d 308 (3d Cir. 1971); *Crinkley v. Holiday Inns, Inc.*, 844 F.2d 156 (4th Cir. 1988). For a franchisor to be vicariously liable for the acts of its franchisee under the apparent agency doctrine, a plaintiff must show that: (1) the franchisor has represented or permitted it to be represented that the party dealing directly with the plaintiff is its agent; and (2) the plaintiff, acting in justifiable reliance on such representations of the franchisor, has dealt with the agent to the detriment of the plaintiff. *Crinkley*, 844 F.2d at 166; see *Gilbert*, 156 Ill. 2d at 525. The first element is satisfied where the franchisor holds itself out as the provider of certain goods and services without informing the patron that

the goods and services are provided by another, whom it considers to be a nonagent, such as a franchisee. The element of justifiable reliance is satisfied if the plaintiff relies on the franchisor to provide the goods and services, rather than on the franchisee.

In the present case, the record contains facts from which it may reasonably be inferred that McDonald's Corporation holds itself out as being the entity responsible for the operation of McDonald's restaurants. McDonald's Corporation's wide, national advertising and its reach into virtually every aspect of its franchisee's business make a patron's assumption that McDonald's Corporation runs McDonald's restaurants natural. These facts can be gleaned from the license agreement, which is contained in the record. The license agreement states: "McDonald's Corporation *** has developed and operates a restaurant system ('McDonald's System'). *** The McDonald's System is operated and is advertised widely within the United States of America." The license agreement further reveals that McDonald's Corporation strives, through its contractual agreements, to ensure that it alone controls how the public perceives its restaurants. McDonald's Corporation's "system" is described as being "comprehensive," the foundation of which is the franchisee's adherence to McDonald's Corporation's "standards and policies" "providing for the uniform operation of all McDonald's restaurants within the McDonald's system." This includes requiring the franchisee to serve only designated food and beverage products; to use only prescribed equipment and building layout and designs; to have all employees wear McDonald's Corporation's uniforms; to train management personnel at McDonald's Corporation's "Hamburger University"; and to adhere strictly to McDonald's Corporation's prescribed standards of "Quality, Service and Cleanliness" in the franchisee's restaurant opera-

tion. The McDonald's Corporation's national advertising also promotes its "system" without distinguishing between company-owned and franchised properties. Pursuant to this national advertising, the public is presented with an identical menu, brand names and promotional offers in all McDonald's Corporation's restaurants. Given these facts, a jury could reasonably conclude that McDonald's Corporation acted in such a way as to create the appearance that it owned and operated the McDonald's restaurant at which the plaintiff was allegedly injured.

The second element is whether O'Banner justifiably acted in reliance on McDonald's Corporation's representations in going to the McDonald's restaurant where he was allegedly injured. The majority opinion finds that the record provides no indication as to why O'Banner went to the McDonald's restaurant in the first place. 173 Ill. 2d at 214. I disagree with this finding. O'Banner's reasons are readily inferable from the record. In his response to McDonald's Corporation's motion for summary judgment, O'Banner stated that he was a business invitee of a McDonald's restaurant. And in his attached affidavit, he averred: "Upon information and belief, the executed license agreement *** contains language which establishes that *** McDonald's Corporation maintained control in the operation of the franchise and over the daily procedures and business" of the McDonald's restaurant. As I noted above in my discussion of the holding-out element, the license agreement shows a great deal of control by McDonald's Corporation over the franchisee's operation of the restaurant at issue. It further details how McDonald's Corporation nationally advertises its "comprehensive" and "uniform" restaurant "system" to the public as, *inter alia*, a "clean, wholesome atmosphere." From these facts, a jury may infer that the public perception is that

a McDonald's restaurant is what it proclaims to be and not "ABC," the franchisee's restaurant. Thus, when O'Banner's reply and affidavit are considered along with the license agreement, there remains a genuine issue of material fact as to whether O'Banner justifiably acted in reliance on the franchisee's apparent authority in entering the McDonald's restaurant.

After considering the record liberally in favor of O'Banner, I find that it presents a genuine issue of material fact as to whether McDonald's Corporation could be vicariously liable for the acts of its franchisee based on the doctrine of apparent agency. O'Banner is thus entitled to his day in court to resolve this factual controversy.

As a final matter, McDonald's Corporation contends that O'Banner waived the issue of apparent agency because he did not plead it. This waiver argument fails. In his complaint, O'Banner alleged that McDonald's Corporation "was doing business in Illinois and owning or leasing, operating, maintaining and/or controlling" the McDonald's restaurant at issue. These allegations are sufficient to plead an agency relationship. See *Gilbert*, 156 Ill. 2d at 527. I further find that McDonald's Corporation's position is disingenuous in this regard. In its motion for reconsideration, McDonald's Corporation itself acknowledged that O'Banner was seeking to hold it liable based on an apparent agency theory. Consequently, McDonald's Corporation is not entitled to an affirmance of the summary judgment entered in its favor on this ground.

For the reasons stated, there exists a genuine issue of material fact regarding the existence of an apparent agency relationship between McDonald's Corporation and the franchisee involved in this case. Summary judgment should not have been granted because McDonald's Corporation's right to judgment is not clear and free

from doubt. The cause should be remanded to the trial court for further proceedings.

JUSTICE FREEMAN joins in this dissent.